STEWARD and wife vs. PETTIGREW.

SHERIFF'S DEEDS: *What mistakes in, may be corrected, etc.*

The sheriff made actual entry and levy upon the proper lands of the judgment debtor, but made a mistake in his return as to the numbers of the land, and carried such mistake into his advertisement, and the lands were sold and deed executed therefor and filed for record, without knowledge on the part of the purchaser of such mis-

take; subsequently, under another judgment, the same lands were levied upon and sold by their proper description and deed executed therefor, the purchaser having notice of the misdescription in the former deed. On bill to cancel the deed under the second sale: *Held,* that the continuance of the mistake in the advertisement did not deprive the sheriff of the power to sell, and the *bona fide* purchaser was not affected by any irregularity or omission by the sheriff in advertising or conducting the sale; 2. That such accident, mistake or irregularity, after the deed has been acknowledged in court, cannot, at a subsequent period, be corrected by the law court, but is relievable in equity.

APPEAL from *Washington* Circuit Court.

Hon. B. J. H. GAMIS, Special Judge.

*Walker & Rogers,* for appellants.

*Rose & Green,* for appellee.

COMPTON, Sp. J. This was a complaint in equity brought in the court below by James R. Pettigrew against George W. Tate, Warren J. Steward and Henrietta, his wife, to correct a mistake in the conveyance of, and to quiet the title to, certain real estate.

The following facts appear in the record: Tate owned and resided on a quarter section of land situate in Washington county, and known as "the George W. Tate place." The sheriff went upon and levied an execution on the land, at the suit of Henry Kaiser, but in his return on the execution, the sheriff, through mistake as to the numbers of the land, described a quarter section different from that on which the levy was in fact made, and to which Tate had no title whatever. This mistake was carried into the advertisement and also into the sheriff's deed. At the sale, which occurred on the 5th day of August, 1867, the sheriff not only read the numbers of the quarter section from the advertisement, but also announced publicly to the bystanders that it was the "George W. Tate place," and recommended it as a "good farm." Both

Steward and Pettigrew bid at the sale, and each believed that he was bidding for the George W. Tate place, Tate alone having knowledge at that time of the mistake in the sheriff's return and failing to communicate the same. The land was knocked off to Pettigrew at the sum of eight hundred dollars, which he paid, and the sheriff made him a deed, Pettigrew remaining ignorant of the mistake until after the deed was duly acknowledged and filed for record. Afterward, Jesse Freeman filed in the office of the clerk of the circuit court, a judgment against Tate before a justice of the peace, and caused execution to issue thereon, under which the same quarter section was sold by its correct numbers, on the 3d day of February, 1868, and the appellant Steward became the purchaser with full knowledge of the mistake in the description of the land connected with the former sale, and caused the sheriff's deed to be made to his wife, the said Henrietta, who, in connection with her husband, brought soon thereafter an action at law against the tenant of Pettigrew, to recover possession of the premises. Prior to the sale at which Pettigrew purchased, Tate was indebted to Steward and also to certain other persons, which indebtedness, including the Kaiser judgment, amounted in the aggregate to about $1,000; and he agreed in parol with Pettigrew, that the latter should bid in his land and keep it, if he would pay off the debts mentioned, which Pettigrew agreed to do and did. After the discovery by the latter of the mistake in the sheriff's deed, and before the sale occurred at which Steward purchased, Tate agreed with Pettigrew on the same terms, and promised to correct the mistake as far as he was able to do so. At the hearing in the court below, the deeds of the sheriff were cancelled; all the title which Tate had to the land in controversy, at the time the Kaiser execution was levied, was divested, and the same vested in Pettigrew in fee simple absolute, and the appellants per-

petually restrained from further prosecution of their action at law.

Tate, the execution debtor, did not appeal, nor did he complain of the levy and sale under the execution in favor of Kaiser; on the contrary, he at all times evinced a disposition to carry out in good faith the parol agreement between himself and Pettigrew touching the sale and purchase of the land. The contest is between the purchasers at the different execution sales; and the question is, whether Pettigrew, upon the facts stated, is entitled to the relief he seeks as against Steward.

The continuance of the mistake in the advertisement, though an irregularity, did not deprive the sheriff of the power to sell, nor make the sale void. The rule is, that a *bona fide* purchaser of property at a sheriff's sale is not affected by any irregularity or omission by the sheriff in advertising or conducting the sale. *Newton v. The State Bank*, 14 Ark., 9; *Ringgold v. Patterson*, 15 id., 209; *Newton's Heirs et al. v. The State Bank*, 22 id., 19. The misdescription not affecting then the title of Pettigrew, if the land in controversy was in fact sold under the Kaiser execution, and the evidence shows that it was, our inquiry is narrowed to the mistake in the return and in the deed of the sheriff.

It is insisted in argument, that as soon as the mistake was discovered Pettigrew, should have applied to the court out of which the execution issued to have the sheriff's return amended, which was an adequate remedy at law, and that because he did not do so, he ought not to be heard in a court of equity. To this it may be replied that the mistake did not come to the knowledge of Pettigrew until after the sheriff's deed was acknowledged before the clerk of the circuit court, and filed in the recorder's office for record; which by force of the act of January 1, 1855, had the same effect as if the

acknowledgment had been taken in open court (Gould's Dig., ch. 68, sec. 70); and this court decided in *The State Bank v. Noland et al.*, 13 Ark., 299, that after the deed has been acknowledged in court, and delivered to the purchaser, the law court cannot, at a subsequent period, upon motion or otherwise, relieve the party injured on the ground of accident, mistake or any irregularity in the proceedings, but that the remedy, in such case, is in equity (see also *Newton v. State Bank*, 14 Ark., 13; Gould's Dig., ch. 68, secs. 67-8-9); and that a court of equity is competent to correct mistakes in records as well as in written instruments or contracts on parol evidence, where the mistake is clearly and satisfactorily established, is now well settled. 1 Story's Eq., sec. 166; *Partridge & Co. v. Harrow et al.*, 27 Iowa, 96; *Heath's Heirs v. Heirs of Callaway*, 7 B. Mon., 179; *Cohen v. Dubose*, 1 Harper's Ch. 102; *Davis et al v. Davis*, 11 Ohio, S. R., 386; *Simpson v. Montgomery*, 25 Ark., 365.

In *Partridge & Co. v. Harrow et al.*, *supra*, where in an action on a promissory note, the clerk, by mistake, entered judgment for a less amount than was actually due, and the mistake was not discovered until after the period allowed by the statute to correct such errors had elapsed; the court held that the party complaining, being without remedy at law, was entitled to relief in equity. So in *Cohen v. Dubose*, in which the court went further than we should be inclined to go; the plaintiff had brought suit at law upon a promissory note, on which a considerable amount of interest was due, and the jury rendered a verdict for the principal of the note, omitting the interest: *Held*, on a direct proceeding in chancery, that parol evidence of a juror was admissible to show that the jury had omitted the interest through mistake, and the mistake being satisfactorily proven, the defendant was decreed to pay the interest. And in *Carnall v. Wilson*, 14

Ark., 482, the mistake sought to be corrected was the same as in this case; and the court denied relief upon the ground that the evidence of the mistake was not satisfactory, not only not questioning the power of the court to afford relief, but clearly intimating that, on sufficient evidence, a different conclusion would have been reached. In the case now before us, the proof is full, clear and decisive as to the mistake, and from the evidence in the record, we cannot doubt that Steward had knowledge of the mistake when he purchased.

It may be remarked, in conclusion, that this case is different from that of *Fennos v. Coulter,* 14 Ark., 38. There the sheriff in making the levy, instead of going upon the land, so as thereby to distinguish it from other property, as it was held in that case he might have done, took from the tax book what he supposed to be the correct numbers of the land, but which were afterward found to be incorrect, and the court declared that the mistake was not in entering the levy on the execution, but consisted in levying on the property of a third person, and not on that of the defendant. Here the reverse is true. The sheriff, as has been seen, went upon and levied on the land of the defendant, and the mistake consists in entering the levy on the execution.

Finding no error in the record, the decree of the court below is, in all things affirmed, with costs.

GREGG, J., being disqualified, did not sit in this case.